FILED USA
U.S. DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

17 DEC -8 AM 9: 40

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

BLAKE PERKINS                              )
                                           )    Case No. 1:17-CV-200-GNS
                    Plaintiff,             )
                                           )    Judge_____
          v.                               )
                                           )    **JURY DEMAND**
WESTERN KENTUCKY UNIVERSITY                )
                                           )
and                                        )
                                           )
HARVEY V. WALLMANN                         )
                                           )
          Director of Physical Therapy     )
          Western Kentucky University      )
          (in his individual capacity)     )
                                           )
                    Defendants.            )

### PRELIMINARY STATEMENT

1. This is an action for compensatory damages and injunctive relief brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 et seq, and 42 U.S.C. § 1983 (with respect to the claims against Defendant Harvey Wallmann in his individual capacity).

2. Specifically, Plaintiff alleges that Defendants Western Kentucky University ("WKU") and Harvey V. Wallmann intentionally discriminated against Plaintiff because of Plaintiff's disability (partial paralysis) by dismissing Plaintiff from WKU's graduate Physical Therapy program.

3. Defendants further failed to provide reasonable accommodations to Plaintiff to remedy this discrimination.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, since Plaintiff's claims arise under a federal statute.

5. Venue in the United States District Court, Western District of Kentucky, is proper pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to these claims occurred in the Western District.

## PARTIES

6. Plaintiff is an adult male resident of Kentucky who was enrolled in the Doctor of Physical Therapy ("DPT") program at WKU. Defendant WKU is a place of public accommodation and a public university receiving federal financial assistance. Defendant Wallmann is the Director of Physical Therapy at WKU's PT program.

## FACTS

7. Plaintiff Blake Perkins is paralyzed from the waist-down following a motorcycle crash in 2011.

8. Despite waist-down paraplegia, Plaintiff was determined to become a physical therapist. He decided to enroll in WKU's DPT program.

9. Though he required the use of a wheelchair, Plaintiff was more than capable of performing the duties required of a physical therapist and excelling in the WKU DPT program.

10. However, from the very outset, WKU faculty and administrators were skeptical that Plaintiff could complete the DPT program.

11. Specifically, Dr. Harvey Wallmann was skeptical that Plaintiff could complete the DPT program because of Plaintiff's disability.

2

12. In February 2016, after Plaintiff was admitted to WKU, Kurt Neelly, WKU Director of Clinical Education, gave an interview to a local news station WBKO regarding Plaintiff's admission to WKU.[1]

13. In this interview, Mr. Neelly stated:

> We [WKU administrators and faculty] had discussions about Blake before he entered into our program. The initial response by a lot of programs would be 'no, he can't do able-bodied activities. He can't, you know, stand, walk, do all those sorts of things.'

14. Dr. Neelly relayed to both Plaintiff and other WKU DPT students that WKU had received negative feedback from the Physical Therapy programs at other Kentucky Universities for admitting Plaintiff, despite Plaintiff's qualifications and ability to complete all degree requirements.

15. Plaintiff had a 3.4 GPA at the start of the Fall 2016 semester, well above the 3.0 minimum required by WKU DPT.

16. Plaintiff was also well-respected and well-liked by his peers, who elected him to serve as Class President in 2014, a role he held until he was dismissed.

**Fall 2016 Semester**

17. Per the requirements of the course curriculum, Plaintiff enrolled in DPT 727 Health Promotion & Wellness, a two-credit course, a prerequisite of which is that it is "open only to DPT students in good standing."[2]

18. DPT 727 was a six-week course with a compressed schedule, beginning on October 31, 2016 and ending on December 9, 2016.

---

[1]      WBKO, *Hometown Hero — Blake Perkins,* available at http://www.wbko.com/content/news/Hometown-Hero---Blake-Perkins-367857021.html (last visited May 24, 2017).

[2]      DPT Program Manual 2016, p. 13. Available online at https://www.wku.edu/physicaltherapy/2016_student_manual.pdf (last visited May 30, 2017).

19. Because of a disability-related illness, Plaintiff was unable to attend the first class meeting of DPT 727 on October 31, 2016. Plaintiff suffered from a urinary tract infection caused by catheters, which Plaintiff requires because of his paralysis. Plaintiff notified professors Ray VanWye and Karen Furgal via email that he would miss this class because of his disability-related illness.

20. In addition, Plaintiff later provided medical documentation from his health care providers establishing that this absence was in fact legitimately related to significant health issues which were disability-related.

21. Despite the medically documented explanations for his absences, Plaintiff was penalized for missing class, and this absence was never excused by the faculty of WKU.

22. On November 2, 2016, Dr. Sonia Young, Associate Program Director of DPT, sent Plaintiff an email stating "Another missed day will result in a referral to the Academic Review Committee."

23. Despite Dr. Young's statement that "referral to the Academic Review Committee" ("ARC") would result from "**another** missed day," Plaintiff was referred to the ARC the very next day, having not missed any additional classes, upon the intervention of Defendant Wallmann. (Emphasis added.)

24. Plaintiff received notice that he had been referred to the ARC from Dr. Wallmann on November 3, 2016 via email.

25. On November 7, 2016, a meeting of the ARC was convened. At this meeting, Plaintiff was placed on probation for professional behavior related to (medical) absences earlier in the semester.

26. In contrast, a similarly-situated non-disabled student became sick with mono and similarly missed classes for medical reasons. This student was called to an advising meeting, where she was given the option to "drop back" a year and re-take the courses she had missed.

27. Another similarly-situated non-disabled student in the Class of 2018 developed an anxiety problem in the middle of the semester due to stress and falling behind in classes. The student missed class time for this issue and was then given the option either to finish the semester (which he was likely to fail) or drop back a year with the next class.

28. Unlike these other non-disabled students, Plaintiff was given no such option to delay his course-work a year so that he could complete DPT 727 in 2017.

29. Despite diligent efforts to continue his coursework for DPT 727, Plaintiff ultimately received a failing grade in the course, as a result of absences related his disability, which absences were supported by medical documentation.

30. On December 13, 2016, Plaintiff received a letter from Dr. Furgal, Dr. Hoover, and Dr. Young, (ARC panel members), which read in pertinent part:

> The Doctor of Physical Therapy Program at Western Kentucky University requires that students maintain good standing while enrolled in the DPT professional curriculum. During the Fall 2016 semester, you earned an "F" in the course DPT 727 Health Promotion & Wellness, which is considered a failing grade as described in the WKU DPT Program Student Manual. Consequently, this negatively affects your academic standing within the program, thus triggering a review of your academic performance by the Academic Review Committee (ARC, pp. 28-30). The members of the ARC have reviewed your performance in this course and recommend to the DPT Program Director that in this case a failing grade warrants your dismissal from the DPT Program.

31. In fact, the mere receipt of a failing grade, per WKU's policy handbook, does not automatically result in dismissal.[3] Rather, the decision regarding dismissal is discretionary.

---

[3]   DPT Program Student Manual 2016, p. 36 ("A student earning an "F" in any didactic course will be referred to the ARC and **may be dismissed** from the Program"); p. 30 ("A student will be referred to ARC and **may be dismissed** from the WKU DPT Program in any of the following cases: 1. An earned "F" in any didactic course.").

32. Upon information and belief, Defendant Wallmann oversaw the ARC panel that heard Plaintiff's case and personally ensured that the ARC dismissed Plaintiff.

33. In contrast, other similarly-situated (non-disabled) students who were subject to dismissal were not dismissed.  Two students in the first graduating class of the DPT program each failed required rotations.

34. Per WKU's DPT Program Clinical Education Manual, "Receiving a grade of Fail in any Clinical Education rotation results in a referral to the ARC for dismissal from the Program."[4]

35. Instead of referral to the ARC for dismissal, however, these students were allowed to re-take the rotation directly after graduation and were given the opportunity to graduate with their peers.

36. Plaintiff was never given the opportunity to re-take DPT 727 or otherwise complete his degree at WKU.

**Appeal and Reapplication Process**

37. Upon receipt of the December 13 dismissal letter, Plaintiff immediately began taking steps to appeal the decision and to seek reinstatement into the DPT program.

38. On December 14, 2016, Plaintiff e-mailed Dr. Neal Chumbler, Dean of the College of Health and Human Services, seeking a review of his case.  In this email, Plaintiff expressed his belief that he had been treated unfairly and disparately relative to other students in the DPT program.

39. In response, Plaintiff received an e-mail reply from Dr. Danita Kelley, Associate Dean of the College of Health and Human Services, offering to schedule a meeting.  This meeting

---

[4]     DPT Program Clinical Education Manual 2016, p. 23.

occurred on January 10, 2017, where Dr. Kelley listened to Plaintiff's complaints and suggested Plaintiff file an appeal through the graduate school.

40. The day before this meeting, on January 9, 2017, Dr. Scott Lyons, Dean of the Graduate School, e-mailed Plaintiff to suggest a meeting regarding Plaintiff's efforts to seek reinstatement. This meeting occurred on January 12, 2017.

41. At this meeting, Dr. Lyons conveyed to Plaintiff that the perception of how Dr. Wallmann and the PT program had handled Plaintiff's case was "very poor" as suggested by many WKU officials.

42. During this campus visit, Plaintiff met with Robert Unseld, Director of The Center for Career and Professional Development and The Student Accessibility Resource Center, regarding WKU's 504 and ADA compliance with respect to Plaintiff's case.

43. Plaintiff conveyed to Mr. Unseld that he believed he had received a failing grade based on absences that should have been medically excused because of disability.

44. Plaintiff conveyed that he had already suffered disability discrimination, not that he needed a prospective accommodation.

45. In response, Mr. Unseld found that Plaintiff had failed to provide his professors with a "Faculty Notification Letter" ("FNL") and therefore Plaintiff had not been denied any "accommodation."

46. Mr. Unseld's rationale reads as follows:

> Based on the information available and the admission from Mr. Perkins of not providing the Faculty with the FNL, it is my finding that Mr. Perkins was not denied any accommodations for the Fall 2016 semester section of OPT 727, Health Promotion and Wellness.

47. Mr. Unseld reached this incorrect conclusion in an apparent misapplication of WKU's stated policy, which does not require a student seeking accommodation to provide

professors with FNL's prior to seeking accommodation. Per WKU's Policy & Procedure

Document 6.1020, Student Disability Accommodations / Section 504 and ADA Compliance:

> Students requesting accommodation for disabilities are responsible for registering with the Student Accessibility Resource Center (SARC). Students are encouraged to register with SARC prior to enrollment **but may register at any point in their academic career at WKU.**[5] (Emphasis added.)

48. Under this policy, Plaintiff was not required to provide FNL letters to faculty until he sought an accommodation.

49. However, Mr. Unseld also apparently completely misunderstood the nature of Plaintiff's request and the remedy he was seeking. At the time that Plaintiff met with Mr. Unseld, Plaintiff had been dismissed from WKU under circumstances that amounted to disability discrimination.

50. Plaintiff was thus seeking to rectify discrimination, not merely a reasonable accommodation. Mr. Unseld furthered the discrimination against Plaintiff by denying Plaintiff's "accommodation" through an incorrect interpretation of WKU's ADA / Section 504 policy.

51. Plaintiff continued doggedly pursuing his appeal of dismissal. Plaintiff's efforts included multiple meetings with various faculty; the preparation of a formal Academic Plan; countless e-mails with WKU faculty and administrators; and submission of a formal appeal packet on April 28, 2017.

52. On May 16, 2017, Plaintiff received a letter from Dr. Lyons stating that Plaintiff's appeal had been denied.

---

[5]     This document is available on WKU's website at https://www.wku.edu/policies/docs/72.pdf, last visited June 6, 2017. Similarly, the "Registration Process" webpage on WKU's website provides: "Students are encouraged to begin the registration process with SARC as soon as they are admitted to WKU, immediately before to registration for classes, to ensure that eligibility for services and accommodations are in place prior to classes beginning." https://www.wku.edu/sarc/registration process.php. There is no requirement under WKU's policy that students seek and acquire an accommodation *prior to* the beginning of classes

53. This news was not unexpected, as prior to sending the May 16 appeal denial letter, Dr.

Lyons had emailed Plaintiff and communicated that the decision was ultimately Defendant

Wallmann's.

54. In a May 8, 2017 email, Dr. Lyons wrote to Plaintiff:

> I have met with Provost Lee and with Dr. Wallmann, and all I can tell you is that
> the decision really lies in the hands of the Physical Therapy faculty and Dr.
> Wallmann. I have not received anything from him yet (though I expect it any
> time now), but being very candid with you, I am not optimistic that this is going
> to go in your favor.

55. This email from Dr. Lyons illuminates the crucial subtext for the May 16 denial letter, which

reads:

> I have reviewed your appeal of dismissal from the Graduate School and the
> Doctor of Physical Therapy program. Upon the recommendation of the faculty
> in the Department of Physical Therapy, I am denying the appeal and upholding
> the dismissal.

56. In fact, the "faculty in the Department of Physical Therapy" was a reference to Defendant

Wallmann, as confirmed by Dr. Lyons's May 8 email to Plaintiff.

57. Defendant Wallmann had, from the outset, at Plaintiff's admission interview, expressed

skepticism about Plaintiff's ability to complete the DPT program with his disability.

58. Further, Defendant Wallmann had intervened to convene the ARC despite Dr. Young's

November 2, 2016 admonition that the ARC would be convened if Plaintiff were to miss

another class, which he did not.

59. The decision of the ARC to dismiss Plaintiff in the first place was made with influence from

Dr. Wallmann, who then also had the ultimate say on the outcome of Plaintiff's appeal, as

confirmed by Dr. Lyons.

**FIRST CLAIM FOR RELIEF:**
**THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

60. Plaintiff incorporates all preceding paragraphs.

61. Plaintiff is a "handicapped person" under the Act in that he has a physical impairment that substantially limits a major life activity.

62. At all relevant times Plaintiff was "otherwise qualified" for participation in the WKU program in question in that he was capable of satisfying the academic requirements set by WKU, with the aid of reasonable accommodations, as set forth above.

63. Plaintiff suffered disparate treatment as a result of his disability.

64. By intentionally discrimination against Plaintiff on the basis of his disability, and by failing to provide reasonable accommodations to Plaintiff, WKU excluded him from participation in, and denied him the benefits of the above-described program solely because of his disability.

### SECOND CLAIM FOR RELIEF:
### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181

65. Plaintiff incorporates all preceding paragraphs.

66. Plaintiff was at all relevant times an individual with a disability as described above.

67. WKU is an entity covered by the ADA since it owns and/or operates a place of public accommodation.

68. WKU discriminated against Plaintiff on the basis of his disability in the manner described above.

### THIRD CLAIM RELIEF:
### DENIAL OF DUE PROCESS BY DEFENDANT WALLMANN

69. Plaintiff incorporates all preceding paragraphs.

70. At Plaintiff's initial interview in Spring 2014, Defendant Wallmann expressed inappropriate skepticism about Plaintiff's ability to complete the DPT program because of Plaintiff's disability.

71. Defendant Wallmann convened the Academic Review Committee in Plaintiff's case, despite assurance by Dr. Sonia Young that the ARC would be convened only if Plaintiff missed another class, which he did not.

72. Defendant Wallmann therefore personally and intentionally convened the ARC despite Dr. Young's statement that the ARC would be convened after "another missed day," which never occurred.

73. Upon information and belief, Defendant Wallmann oversaw the ARC panel that heard Plaintiff's case and personally ensured that the ARC dismissed Plaintiff.

74. WKU policies did not mandate Plaintiff's expulsion in this case, as set forth above.

75. Rather, the decision to expel was discretionary.

76. However, in Plaintiff's case, the decision to expel Plaintiff was not an actual exercise of professional judgment, but rather an action of discrimination against Plaintiff, a disabled person.

77. Similarly-situated non-disabled students were not referred to the ARC for academic infractions that merited referral to the ARC under WKU's policies.

78. The decision to convene the ARC in Plaintiff's case was therefore arbitrary and neither careful nor deliberate.

79. Dr. Lyons informed Plaintiff via email that the ultimate decision in Plaintiff's expulsion "really lies in the hands of the Physical Therapy faculty and Dr. Wallmann."

80. Plaintiff was therefore denied the protections of procedural due process applicable in an academic setting.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Compensatory damages in an amount to be proved at trial;

B. Punitive damages in an amount to be proved at trial;

C. Injunctive relief ordering Defendant to reasonably accommodate Plaintiff's Disability and to re-admit him to the WKU DPT program;

11

D. Attorney fees and costs; and

E. Such additional relief as the Court deems just and proper.

Respectfully submitted,

DAVID RANDOLPH SMITH & ASSOCIATES

By: _Christopher Smith_

David Randolph Smith    TN # 011905
Dominick R. Smith    TN # 028783
Christopher W. Smith    TN # 034450
1913 21st Avenue South
Nashville, TN 37212
(615) 742-1775

12